UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ROBERT LEACH and KEESHA LEACH,

                                                 Plaintiffs,         **REPORT AND**
            v.                                                **RECOMMENDATION**

RAFAIL KAYKOV, M&M ROYALE LIMOUSINE,     07-CV-4060 (KAM) (VVP)
INC., J. FLETCHER CREAMER & SON, INC., and
ROYAL DISPATCH SERVICE, INC.,

                                                 Defendants.
-----------------------------------------------------------------x
POHORELSKY, Magistrate Judge:

      This is a diversity action arising out of an automobile accident in New Jersey. Judge Matsumoto has referred the matter to me for a report and recommendation as to choice-of-law. The parties do not dispute that substantive New Jersey law applies to the conduct at issue, but differ as to what state's law applies to loss allocation among the defendants. The plaintiffs, Robert and Keesha Leach, and the defendants, Rafail Kaykov and Royal Dispatch Service, Inc. ("RDS") all argue that Pennsylvania law governing loss allocation should apply, while the defendant, J. Fletcher Creamer & Son, Inc. ("JFC"), contends that New Jersey law should apply. For the reasons that follow, the undersigned respectfully recommends that the law of New Jersey should govern loss allocation in this case.

## BACKGROUND

      The facts for the purpose of this report and recommendation are relatively straightforward and are not in dispute. On July 17, 2007, Robert Leach was a passenger in a livery cab owned, operated, and driven by Kaykov, a franchisee of RDS. Leach and Kaykov were traveling westbound along Interstate 80, through New Jersey en route to Leach's home in Pennsylvania. In or near Mount Olive, New Jersey, Kaykov's vehicle entered a construction zone, and struck a construction

vehicle that had been parked in the left lane of the highway. That construction vehicle had been operated by, and was under the control of, JFC. Leach suffered extensive injuries.

Leach is a resident of Pennsylvania. In September 2007, he and his wife – also a Pennsylvania resident – initiated suit in this court. Kaykov is a New York resident (Queens), as is RDS, a New York corporation with Queens as its principal place of business. Leach also asserted claims against JFC, which is incorporated under New Jersey law; its headquarters and principal place of business are also in New Jersey. JFC is also registered in Pennsylvania to do business there as a foreign corporation.

## Discussion

### A. Legal Standards

Federal courts sitting in diversity will apply the law of the forum state with respect to choice-of-law rules. *See Gilbert v. Seton Hall University*, 332 F.3d 105, 109 (2d Cir. 2003) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941)); *Sugerman v. MCY Music World, Inc.*, 158 F. Supp. 2d 316, 322 (S.D.N.Y. 2001). Thus, the court applies New York law on conflict of laws. *See O'Rourke v Eastern Air Lines, Inc.*, 730 F.2d 842, 847 (2d Cir. 1984) (charging the court with determining "what law New York courts would apply in this situation"). The first step of the inquiry under New York law involves determining whether the laws of the different jurisdictions actually conflict. *See Stichting Ter Behartiging Van De Belangen Van Oudaandeelhouders In Het Kapitaalvan Saybolt International B.V. v. S.E. Schreiber*, 407 F.3d 34, 46 (2d Cir. 2005) (quoting *Matter of Allstate Ins. Co.*, 613 N.E.2d 936 (N.Y. 1993)).

A genuine conflict exists between New Jersey law and Pennsylvania law with respect to loss allocation.[1] Pennsylvania law holds that plaintiffs in a negligence case "may recover the full amount of the allowed recovery from any defendant against whom the plaintiff is not barred from recovery. Any defendant who is so compelled to pay more than his percentage share may seek contribution."[2] 42 Pa. Cons. Stat. § 7102(b); *DeWeese v. Weaver*, 824 A.2d 364 (Pa. Commw. Ct. 2003) . Under New Jersey law, a plaintiff may only recover the "full amount of the damages from any party determined by the trier of fact to be 60% or more responsible for the total damages." N.J. Stat. Ann. § 2A:15-5.3. Plaintiffs may recover "only that percentage of the damages directly attributable to that party's negligence or fault from any party determined by the trier of fact to be less than 60% responsible for the total damages." *Id.* Put differently, in New Jersey, parties found to bear 60% or more responsibility are jointly and severally liable, while parties found to be less than 60% responsible are only liable for their apportioned share of responsibility.

Until quite recently, Pennsylvania law aligned with New Jersey law. That is no longer the case.[3] *See DeWeese*, 824 A.2d at 371 (finding unconstitutional statutory provision imposing joint

---

[1] In their submissions, the parties have not addressed whether New York law on joint and several liability might apply, but limit their analyses to the laws of New Jersey and Pennsylvania. As the forum state and the state where a plurality of the parties is domiciled, New York law on loss allocation could conceivably apply, but since the parties have not addressed it, the court does not consider it. In any event, New York law on joint and several liability appears to align with that of Pennsylvania. *See In re September 11 Litig.*, 621 F. Supp. 2d 131, 146 (S.D.N.Y. 2009).

[2] That statute also states that, "[w]here recovery is allowed against more than one defendant, each defendant shall be liable for that proportion of the total dollar amount awarded as damages in the ratio of the amount of his causal negligence to the amount of causal negligence attributed to all defendants against whom recovery is allowed." 42 Pa. Cons. Stat. § 7102(b).

[3] *DeWeese* declared the Pennsylvania loss allocation statute unconstitutional not because of its provisions concerning joint and several liability, but for procedural reasons pertaining to how it was enacted. 824 A.2d at 371. The law violated the Pennsylvania Constitution's "single subject rule" because the bill as passed also legislated a subject area (DNA samples in sex offense cases) unrelated to comparative negligence. *Id.* It might be argued that given this legislative history and the possibility that

and several liability only on those 60% or more at fault). It is also true that Pennsylvania's General Assembly has passed a bill that would amend that state's law to again bring it into line with New Jersey's, and has referred it to the Judiciary Committee. *See* 2009 Pa. H.B. 525. That bill is not yet law. Thus, as Pennsylvania law now stands – and stood at the time of the accident – a party who has been assigned minimal responsibility may still be jointly and severally liable to the plaintiff, but may seek contribution from the other co-defendants. Because New Jersey law restricts joint and several liability to those 60% or more at fault, the two laws conflict and the court proceeds with its analysis.

In determining what law to apply, New York "has adopted an 'interests analysis,' which requires that 'the law of the jurisdiction having the greatest interest in the litigation will be applied.'" *Kalb, Voorhis, & Co. v. American Financial Corp.*, 8 F.3d 130, 132 (2d Cir. 1993) (quoting *Intercontinental Planning, Ltd. v. Daystrom, Inc.*, 248 N.E.2d 576, 582 (N.Y. 1969)). For conflicting laws regulating conduct or substance, the law of the place of the tort ordinarily controls, because that state usually has the strongest interest in regulating the specific issues raised in the litigation. *Babcock v. Jackson*, 191 N.E.2d 279, 285 (N.Y. 1963); *Schultz v. Boy Scouts of America*, 480 N.E.2d 679, 684-85 (N.Y. 1985). However, the disposition of "other issues" (including loss-allocation), turns on the "law of the jurisdiction which has the strongest interest in the resolution of the particular issue presented." *Id.* In making that determination, courts look at (1) the significant contacts and the jurisdiction in which they are located, and (2) whether the law's purpose regulates

---

the legislature might change the law again, Pennsylvania has less of an interest in seeing its law, as it now stands with respect to loss allocation, applied to this dispute. In other words, the peculiarity of the legislative history would be used, not to show that there is not a conflict between New Jersey and Pennsylvania law, but, moving on from that inquiry, as a factor in assessing Pennsylvania's relative interest in seeing its law applied, i.e., that the application of New Jersey law better expresses the legislative intent underlying Pennsylvania's law. Whatever the merit of that argument, the instant dispute can be decided without reference to it.

conduct or allocates loss. *See Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996); *Padula v. Lilarn Properties Corp.*, 644 N.E.2d 1001, 1002 (N.Y. 1994); *Schultz*, 480 N.E.2d at 684-85. "In all interest analyses, the significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort.'" *Krock*, 97 F.3d at 646 (quoting *AroChem Int'l, Inc.v. Buirkle*, 968 F.2d 266, 270 (2d Cir. 1992); *Schultz*, 480 N.E.2d at 684).

Traditionally, courts had resolved conflicts issues through the principle of *lex loci delictus*, that is, by "mechanically" applying the law of the place where the tort occurred. *See Cooney v. Osgood Machinery, Inc.*, 612 N.E.2d 277, 280 (N.Y. 1993) (describing history of choice of law rules in New York). *Babcock* modified the traditional model by giving "controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." 191 N.E.2d at 283; *see also Barkanic v. General Admin. of Civil Aviation of the People's Republic of China*, 923 F.2d 957, 961-63 (2d Cir. 1991). *Babcock* itself involved a New York passenger (the plaintiff), a New York driver (the defendant), and an automobile accident that occurred "fortuitous[ly]" in Ontario, Canada. 191 N.E.2d at 280, 285. The driver's estate sought the protections of Ontario's "guest statute," reckoning that the "law of the place where the accident occurred governs and that Ontario's guest statute [under which automobile drivers were not liable to their passengers for injuries] bars recovery." *Id.* The Court of Appeals disagreed, finding that in spite of the principle of *lex loci delictus*, New York had "dominant contacts" with the dispute and the parties and a much stronger interest in the resolution of the case, and that consequently, that state's law should apply.[4] *Id.* at

---

[4] Even so, it is worth underscoring that the Court was determining standards of liability and not conduct. "Where the defendant's exercise of due care in the operation of his automobile is in issue, the jurisdiction in which the allegedly wrongful conduct occurred will usually have a predominant, if not exclusive concern. In such a case, it is appropriate to look to the law of the place of the tort so as to give

283-85. Ontario's interest in dictating standards of recovery for non-domiciliaries in a New York court was comparatively weak relative to that of New York, where both parties were domiciled, where the "guest-host relationship arose," where the automobile trip in question began and was to have ended, and where the automobile was "garaged, licensed, and undoubtedly insured." *Id.* at 284-85. Thus, to the extent that *Babcock* displaced *lex loci delictus*, it did so in the limited context of when the locus's "sole relationship with the occurrence is the purely adventitious circumstance that the accident occurred there." *Id.* at 284.

To help guide them in determining which state has the superior interest in seeing its loss allocation laws applied, New York courts look to the standards established by *Neumeier v. Kuehner*, 286 N.E.2d 454 (N.Y. 1972). *See Gilbert*, 332 F.3d at 109 (citing *Cooney*, 612 N.E.2d at 277; *Caruolo v. John Crane, Inc.*, 226 F.3d 46, 57 (2d Cir. 2000)). *Neumeier* offered a variation on the *Babcock* scenario, because, while the accident occurred in Ontario, the passenger-victim (the plaintiff) was domiciled in Ontario rather in New York. *Neumeier*, 286 N.E.2d at 455. The driver's estate sought the protections of Ontario's guest statute. In an effort to achieve a "greater degree of predictability and uniformity," *Neumeier* laid out three different principles to resolve choice-of-law problems with respect to liability.[5] 286 N.E.2d at 457-58. The first principle applies when the parties are domiciled in the same state, and the car is also registered there. *Id.* at 457. Whether the tort actually occurred in that state or elsewhere, the laws of the domicile state should control in such situations. *Id.* Notably, this was the situation in *Babcock*, where because of the parties' domiciles

---

effect to that jurisdiction's interest in regulating conduct within its borders, and it would be almost unthinkable to seek the applicable rule in the law of some other place." *Babcock*, 191 N.E.2d at 284.

[5] The rules that the court adopted and the wording it used reflect the facts of that specific case, but the rules are intended to be more broadly applicable, and *Neumeier* is by no means limited to its facts. *See Cooney*, 612 N.E.2d at 281 (citing *Schultz*, 480 N.E.2d at 686-87).

in New York, the court applied that law instead of the law of Ontario, where the tort had actually occurred. 191 N.E.2d at 284-85. *Neumeier*'s second principle applies when the parties reside in different jurisdictions, and the conduct occurred in one of them.

> When the driver's conduct occurred in the state of his domicile and that state does not cast him in liability for that conduct, he should not be held liable by reason of the fact that liability would be imposed upon him under the tort law of the state of the victim's domicile. Conversely, when the guest was injured in the state of his own domicile and its law permits recovery, the driver who has come into that state should not – in the absence of special circumstances – be permitted to interpose the law of his state as a defense.

286 N.E.2d at 457-58. Subsequently, this rule has been characterized more broadly to include situations wherein the "parties are domiciled in different states and the local law [where the tort was committed] favors the respective domiciliary." *Cooney*, 612 N.E.2d at 281; *DiTondo v. Meagher*, 883 N.Y.S.2d 690, 695 (Sup. Ct. Apr. 22, 2009) (applying *Neumeier*'s second principle such that "if the tort takes place in the state where one party is domiciled and the law of that state favors the domiciliary, the law of the place of the injury controls loss allocation."). In such circumstances, a defendant domiciliary does not generally face greater liability "by reason of the fact that liability would be imposed upon him under the tort law of the state of the victim's domicile." *Neumeier*, 286 N.E.2d at 457-58. The defendant receives the protection of his own state's loss allocation rules when his conduct occurred in that state, even if those rules conflict with the law of the plaintiff's domicile. *See id.* This principle essentially "adopts a 'place of injury' test." *Cooney*, 612 N.E.2d at 281. The "situs of the tort is appropriate as a 'tiebreaker'" since both parties have "purposefully associated themselves in a significant way" with that jurisdiction. *Neumeier*, 286 N.E.2d at 458; *Cooney*, 612 N.E.2d at 283 ("A primary reason that locus tips the balance, of course, is that ordinarily, it is the place with which both parties have voluntarily associated themselves.").

*Neumeier*'s third principle is in play in "other situations, when the parties are domiciled in different states." 286 N.E.2d at 458. Later cases have applied this rule when the parties are domiciled in different jurisdictions and the tort occurred in a third jurisdiction. *See Gilbert*, 332 F.3d at 109; *Schultz*, 480 N.E.2d at 687. In such circumstances, the "law to be applied is [still] that of the jurisdiction where the accident happened unless it appears that 'displacing [the] normally applicable rule will advance the relevant substantive law purposes' of the jurisdictions involved." *Neumeier*, 286 N.E.2d at 458 (internal citations omitted). The analysis seeks to avoid "impairing the smooth working of the multistate system or producing great uncertainty for litigants." *Id.* (internal quotations omitted). Even under this principle, the locus of the tort is still likely determinative. *See Cooney*, 612 N.E.2d at 281. Thus, in *Neumeier*, the court used the third rule, and after analyzing each jurisdiction's interests, applied the Ontario guest statute, because the plaintiff "failed to show that [New York's] connection with the controversy was sufficient to justify displacing the rule of *lex loci delictus*." 286 N.E.2d at 458. With the exception of the *Babcock* fact pattern, *Neumeier*'s other rules start from, and maintain, the presumption that *lex loci delictus* will normally apply.

**B. Analysis**

The same result is called for here, as the instant situation is not all that different from *Neumeier*, since the parties (Leach and JFC, for the purposes of this determination) are domiciled in different jurisdictions (New Jersey and Pennsylvania) and the defendant's tortious conduct occurred in one of those states. Put differently, at issue is JFC's (a New Jersey party) conduct in New Jersey. Unlike *Neumeier*, however, this scenario fits more squarely within *Neumeier*'s second principle, because the local (New Jersey, as the locus of the tort) law favors JFC, the New Jersey domiciliary. Clearly, New Jersey law would restrict JFC's liability only to its share of

responsibility, as long as it is below the 60% threshold. Under *Neumeier*, JFC should not be exposed to potentially greater liability under the law of Leach's domicile, when the law of its own domicile and the place of the tort would restrict its liability to its apportioned share of responsibility, as long as it was less than 60%. *See Cooney*, 612 N.E.2d at 281; *Neumeier*, 286 N.E.2d at 457-58. Therefore, *Neumeier*'s second principle clearly calls for the application of New Jersey rules on loss allocation, and of *Neumeier*'s three principles, it is the one the court finds most relevant. As the state where JFC is domiciled and the state in which JFC's relevant conduct took place, New Jersey would have the strongest interest in, and contacts with, this case and these parties.

Leach, Kaykov, and RDS all argue that they should receive the benefit of a more extensive analysis of interests under *Neumeier*'s third rule, which calls for a less categorical approach, though it does start from the premise that *lex loci delictus* will normally apply. Essentially, they propose a hybrid rule that uses the third rule's greater flexibility to arrive at the conclusion that JFC should be treated as a Pennsylvania domiciliary, thus prompting a *Babcock* type of result by applying *Neumeier*'s first rule, when the parties are co-domiciliaries. Such a convoluted approach has little grounding in the relevant cases. But even if this case did fall under *Neumeier*'s third rule – notwithstanding the relative clarity of *Neumeier*'s second rule in this context – the determination that New Jersey has the greatest interest and that its rules on joint and several liability should apply, would still hold. Pennsylvania certainly has an interest in seeing that its resident is made whole for the injuries he suffered, and to help ensure such a result, it allows for a full recovery from any defendant if another is insolvent or is otherwise unable to satisfy the judgment. Pennsylvania law thus shifts to any co-defendant the burden of seeking contribution, rather than forcing plaintiffs to bear it themselves. No matter the result, this interest is strong and should not be minimized.

Conversely, however, New Jersey's interest in seeing its own law applied to this action is also quite strong. New Jersey has a legitimate, direct interest in protecting its own citizens from being liable for a full judgment when their conduct was less than 60% responsible for the harm or injuries, and has clearly spoken to that effect. It is difficult to say on this basis alone which state has the stronger stake in this action, and it seems that the two opposing interests would cancel each other out. *See Cooney*, 612 N.E.2d at 281 (finding the "interest of each State in enforcement of its law [] roughly equal" and that that principle is "implicit" in *Neumeier*'s second and third rules).

The remaining considerations, however, favor New Jersey. New Jersey would have an interest in ensuring that its resident, which at the time of the accident was performing repair work on a New Jersey road, is not jointly and severally liable for an incident arising from that work in and for the benefit of, New Jersey – especially when that state's law would not render it jointly and severally liable. Both parties should have a reasonable expectation that New Jersey rules on loss would apply, since that is the state where their "relevant contacts" with each other arose. *See Gilbert*, 332 F.3d at 111 (applying loss allocation rules of the state where the parties had "shared most of their contacts with each other"); *Schultz*, 480 N.E.2d at 687 (same). Put differently, since this action arises from the "voluntary association" between the parties in New Jersey, it is natural that loss allocation should be governed by that state's laws. *See Gilbert*, 332 F.3d at 111; *Cooney*, 612 N.E.2d at 281-83. Moreover, it would promote uncertainty if the extent of JFC's resulting liability depended on the state of residence of whoever is harmed as a result of its conduct that occurred exclusively in New Jersey. JFC's share of liability should be constant and consistent as cars proceed past its construction areas, and should not be made to depend, adventitiously or fortuitously, on the domiciles of the drivers and passengers in the many cars that pass by.

In arguing for Pennsylvania loss allocation rules, Leach, Kaykov, and RDS misread the situation and the law. Beyond having Leach as a domiciliary, Pennsylvania's connection to this lawsuit is tenuous. The "strong" contacts asserted between Pennsylvania and this lawsuit and the parties, are mostly derivatives of the only meaningful connection, that the Leaches are residents of that state. The court does not view as particularly relevant that Pennsylvania was the destination when the accident occurred. *Cf. Babcock*, 191 N.E.2d at 484-45 (crediting as *a* factor among many others, in applying New York law that the automobile trip would have ended in New York had the accident not occurred in Ontario); *Schultz*, 480 N.E.2d at 684 (describing how "destination" has subsequently been discounted as an important factor). That is a mere offshoot of the fact that Leach was a Pennsylvania resident returning home through New Jersey. And that I-80 leads into Pennsylvania is also incidental to other considerations already discussed. Likewise, that Pennsylvania is the state where Leach has suffered from his injuries flows from his residence in that state. Finally, that JFC is registered to do business in Pennsylvania as a foreign corporation is not especially probative here, as the instant dispute does not arise from JFC's activities in that state. Whatever contacts JFC has had or currently has with Pennsylvania, it is quite clearly domiciled in New Jersey and not Pennsylvania. There can be no doubt that an entity (1) incorporated in New Jersey; (2) head-quartered in New Jersey; and (3) having New Jersey as its principal place of business is, for all intents and purposes, a New Jersey domiciliary. Under Title 28, a corporation is a citizen, for purposes of determining its domicile, of the state where it is incorporated and/or has its principal place of business.[6] 28 U.S.C. § 1332(c)(1). Most importantly, the case law cited *supra*

---

[6] To be clear, a corporation may be domiciled in two states, but the relevant consideration here is whether JFC – through the state of incorporation or its principal place of business – can be said to be domiciled in Pennsylvania. Whatever contacts JFC has had with Pennsylvania, it is clearly not a

clearly instructs courts to consider the parties' *domiciles* in the respective jurisdictions – not other contacts that the defendant might have with the state of the plaintiff's residence. Thus, most of Pennsylvania's purported contacts with this case and these parties, aside from Leach's domicile, are duplicative, not terribly relevant, or overstated.

Applying Pennsylvania law would not be difficult to accomplish, and courts will not infrequently apply the substantive law of one jurisdiction and then the loss-allocation rules of another. But that Pennsylvania law on joint and several liability could be applied here with relative ease and minimal disruption is not a reason to apply it in the first instance, when the rules seem to call for a contrary result. Pennsylvania's law is in play only because Leach fortuitously happens to live there. By that rationale, if a resident of Iowa or Utah – also states through which I-80 passes – happened to fall victim to a tortious act in New Jersey, the loss allocation rules of those states would apply. And plaintiffs, upon leaving their states of residence and traveling elsewhere, would carry around with them the loss allocation laws of their domicile wherever they happen to travel. These are perversions of the prevailing considerations, and they do not flow naturally from the principles in the *Babcock-Neumeier* line of cases. Cumulatively, these indicators strongly favor applying New Jersey law on loss allocation, not as a reflexive application of *lex loci delictus*, but after a determination that the state where the tort occurred – in this particular case – has the greatest interest in resolution of the issues involved. Applying New Jersey law *in toto* is thus consistent with

---

Pennsylvania citizen or domiciliary, and that question is not seriously in dispute. The court largely agrees with JFC that the other parties' argument conflates the concept of "minimum contacts" for purposes of jurisdiction or due process, with that of domicile for conflicts purposes. Here, because the central concern is the parties' domiciles, the facts that might bestow a Pennsylvania court with jurisdiction over JFC are not particularly relevant.

New Jersey having the greatest interest in this litigation – either more categorically under *Neumeier*'s second rule, or less categorically under *Neumeier*'s third rule.

## CONCLUSION

For the reasons stated above, the court respectfully recommends that the court apply the law of New Jersey with respect to loss allocation.

\*        \*        \*        \*        \*        \*        \*

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court with a copy to the undersigned within 14 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298 (2d Cir. 1992).

*Viktor V. Pohorelsky*
VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated: Brooklyn, New York
April 2, 2010