```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ROBERT LEACH and KEESHA LEACH,

          Plaintiffs,

          -against-                                              07-cv-4060 (KAM)(VVP)

RAFAIL KAYKOV and J. FLETCHER
CREAMER & SON, INC.,                                             MEMORANDUM & ORDER

          Defendants.
--------------------------------------------------------X
J. FLETCHER CREAMER & SON, INC.,

          Cross-claim Plaintiff,

          v.

ROYAL DISPATCH SERVICES, INC.,

          Cross-claim Defendant.
--------------------------------------------------------X
```

**MATSUMOTO, United States District Judge:**

        Presently before the court is the motion by defendant Royal Dispatch Services, Inc. ("Royal") for judgment as matter of law on the cross-claim against Royal for contribution by defendant J. Fletcher Creamer, Inc. ("JFC"), pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. Royal's motion was made at the close of plaintiffs' Robert and Keesha Leach ("plaintiffs") case-in-chief in this trial and the presentation by Royal of its sole fact witness, Ammon Oberlander, franchisee liaison for Royal. At the time of Royal's Rule 50 motion, all of the fact witnesses to be called by the parties had testified, and only expert witnesses for the defense remained to be called.

        For the reasons that follow, Royal's motion is granted and JFC's cross-claim for contribution against Royal is dismissed with prejudice. There are no other claims asserted against Royal in this action.

# BACKGROUND[1]

Trial commenced on January 15, 2013, and the parties presented all of their fact witnesses prior to plaintiffs resting after presenting their case-in-chief. (*See* Minute Entry dated 1/15/13.) Among the trial witnesses with testimony relevant to JFC'S cross-claim for contribution against Royal are Rafail Kaykov, a franchisee of Royal and the driver of the livery vehicle in which plaintiff Robert Leach was a back-seat passenger at the time of the accident giving rise to this action, and Ammon Oberlander, Royal's Franchisee liaison. Mr. Kaykov testified that he was a franchisee of Royal pursuant to a Franchise Agreement, but did not present specific testimony regarding the degree of control exercised by Royal over the operation of his vehicle and the performance of his duties as a franchise livery driver. Mr. Kaykov testified that on the day of the accident, he had accepted a radio dispatch from Royal to pick up plaintiff in Manhattan and transport him to his home in Pennsylvania. Mr. Kaykov had determined the route for the job and was driving westbound on I-80 in New Jersey when the accident occurred on July 17, 2007. (*See generally* Trial Transcript on 1/15/13.)

Mr. Oberlander testified on January 18, 2013, that the Franchise Agreement (admitted as Defense Exhibit K) between Royal, as franchisor, and Mr. Kaykov, as franchisee, provided a means by which a franchisee may receive calls for transportation, which may be accepted or rejected by the franchisee. (*See generally* Trial Transcript on 1/18/13.) The Franchise Agreement required, *inter alia*, that franchisees either purchase and install in their vehicles computer equipment to receive dispatches from Royal or lease the equipment from Royal by paying a deposit to Royal. The franchisor required that franchisees attend and pass a

---

[1] The court previously denied Royal's motion for summary judgment on JFC's cross-claim for contribution, finding that issues of material fact remained to be tried regarding the degree of control exercised by Royal over the performance by franchisees of their duties under the Franchise Agreement, and dismissed JFC's indemnification cross claim against Royal in a Memorandum and Order entered on March 30, 2011 (ECF No. 88). The parties' familiarity with the facts and procedural history of this case is presumed. Only the facts relevant to the instant motion will be set forth herein.

training course provided by the franchisor in the proper use and operation of the computer dispatch system. The franchise fee and deposit for the computer dispatch equipment leased from the Royal are refunded to the franchisee when the Franchisee Agreement is terminated and the equipment is returned.

Mr. Oberlander further testified that, under the Franchise Agreement, a franchisee receives dispatches for jobs from Royal and may use its name, signage and trademarks while performing livery jobs accepted from Royal. The franchisee must use a Lincoln Town Car or Cadillac that is not more than three years old to transport clients received from Royal's dispatch system. Customers of Royal provide a voucher to the driver who submits the voucher to Royal for payment. Depending on the time period within which the franchisee opts to be paid by Royal, the franchisee pays a commission to Royal of 18% or 24%.

As required by New York state law and the New York City Taxi and Limousine Commission (TLC), drivers who accept Royal's dispatches to transport clients must be licensed, registered and insured. The driver must pay all of the necessary fees associated with licensing, registration and insurance.

The Franchise Agreement also requires that the franchisee abide by the rules and regulations prescribed in the Rule Book, including, *inter alia*, vehicle maintenance, dress codes and conduct for the drivers. The Rule Book was developed and implemented by a Franchisee Board comprised of franchisees elected by the franchisees themselves. The Franchisee Board is the body that creates and implements the rules and regulations, adjudicates and enforces violations of the Rule Book and imposes discipline or other sanctions for infractions of the Rule Book. The Franchisor does not discipline the drivers. The Franchisee Board also inspects the vehicles of franchisees for cosmetic maintenance to ensure that the vehicles are clean.

A franchisee may accept jobs from other dispatch companies and may also accept jobs from customers of Royal that were not dispatched through Royal. Subject to approval of the driver by Royal, the franchisee was permitted to hire drivers to perform work under the Franchise Agreement but was fully responsible for the acts of any drivers it hired. Royal did not supervise drivers who received dispatches, including defendant Kaykov, with regard to the manner in which the drivers performed the dispatched livery work.

Based on the above undisputed evidence admitted at trial, counsel for Royal moved pursuant to Rule 50(a) that judgment should be entered for Royal on JFC's cross-claim for contribution. (*See generally* Trial Transcript on 1/18/13.) Specifically, Royal argued that the court has already found that Mr. Kaykov was an independent contractor with respect to Royal (*see* ECF No. 88, Summary Judgment Order dated 3/30/11, at 57-59) and, thus, liability for Mr. Kaykov's acts can only be imputed to Royal if Royal exerted control over the manner and means by which Mr. Kaykov performed his work as a livery driver. According to Royal, the evidence presented at trial is insufficient for a reasonable juror to conclude that Royal controlled the manner and means by which Mr. Kaykov performed his work as a livery driver.

## LEGAL STANDARD

Rule 50(a) of the Federal Rules of Civil Procedure provides, in pertinent part, that:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
> (A) resolve the issue against the party; and
>
> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

4

Fed. R. Civ. Proc. 50(a).  In the Second Circuit, "'[j]udgment as a matter of law may not properly be granted to [the movant] under Rule 50 unless the evidence, viewed in the light most favorable to [the nonmovant], is insufficient to permit a reasonable juror to find in [the movant's] favor." *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001) (quoting *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir. 1998)).  Rule 50 requires the party making such a motion to "specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment," and, "[a]ccordingly, the JMOL motion must at least identify the specific element that the defendant contends is insufficiently supported." *Galdieri*, 136 F.3d at 287.  Additionally, the court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury. *Tolbert v. Queens Coll.*, 242 F.3d 58, 70 (2d Cir. 2001) (quotation marks and citation omitted).

"The same standard applies to a Rule 50(a) motion for judgment as a matter of law and a Rule 50(b) renewed motion for judgment as a matter of law." *Perdue v. City Univ. of New York*, 13 F. Supp. 2d 326, 332 (E.D.N.Y. 1998) (citing *Raspente v. Nat'l R.R. Passenger Corp.,* 111 F.3d 239, 241 n.3 (2d Cir. 1997)).  A court may not grant judgment as a matter of law under unless (1) there is such a "'complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture' or (2) there is 'such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [it].'" *Learning Annex Holdings, LLC v. Rich Global, LLC*, 860 F. Supp. 2d 237, 240 (S.D.N.Y. 2012) (quoting *United States v. Space Hunters, Inc.*, 429 F.3d 416, 429 (2d Cir. 2005)); *accord Doctor's Assocs. v. Weible*, 92 F.3d 108, 111-12 (2d Cir. 1996).

### A. The Control Exception to the Principal-Independent Contractor Relationship

As the court has previously noted in its order denying Royal's motion for summary judgment (*see* ECF No. 88, Order dated 3/30/2011), in order to hold a party vicariously liable for the torts of another, New Jersey courts first ask if the relationship is that of an employer-employee or a principal-independent contractor. *Carter v. Reynolds*, 175 N.J. 402, 409, 815 A.2d 460 (2003). If the relationship is that of an employer-employee, then liability will be imposed on the employer if the employee was acting within the scope of his employment. *Id.* at 408–09, 815 A.2d 460. Liability for the torts of an employee is imposed on an employer because "one who expects to derive a benefit or advantage from an act performed on his behalf by another must answer for any injury that a third person may sustain from it." *Id.* at 408, 815 A.2d 460.

On the other hand, if the relationship is determined to be that of a principal-independent contractor, the court will only impute liability if the relationship falls within one of three exceptions, as described below. *Mavrikidis v. Petullo*, 153 N.J. 117, 133, 707 A.2d 977 (1997) (citing *Majestic Realty Assocs., Inc. v. Toti Contracting Co.*, 30 N.J. 425, 431, 153 A.2d 321 (1959)). This is because "one who hires an independent contractor 'has no right of control over the manner in which the work is to be done, [since the work] is to be regarded as the contractor's own enterprise.'" *Baldasarre v. Butler*, 132 N.J. 278, 291, 625 A.2d 458 (1993) (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts, § 71 (5th Ed. 1984)); *see also Mavrikidis,* 153 N.J. at 134, 707 A.2d 977 ("[T]he status of an independent contractor is characterized by the attributes of self-employment and self-determination in the economic and professional sense." (internal citations and quotation marks omitted)). In this case, the court has already determined that, based on the variety of factors considered in New Jersey, Mr. Kaykov

and Royal share a principal-independent contractor relationship. (ECF No. 88, Summary Judgment Order dated 3/30/11, at 57-59.)

New Jersey law recognizes three exceptions that would cause a principal to lose immunity from liability for the torts of an independent contractor. The exceptions are if the principal: "(a) . . . retains control of the manner and means of the doing of the work which is the subject of the contract; (b) . . . he engages an incompetent contractor; or (c) . . . the activity contracted for constitutes a nuisance per se." *Mavrikidis*, 153 N.J. at 133, 707 A.2d 977 (citing *Majestic*, 30 N.J. at 431, 153 A.2d 321). Under the first and only applicable exception, the principal may face liability for an independent contractor's torts if he "reserve[s][ ] control 'of the manner and means of the contracted work." *Id*. at 134, 153 A.2d 321 (internal citation omitted). The reservation of control may be expressed "over the equipment to be used, the manner or method of doing the work, or direction of the employees of the independent contractor." *Id*. at 135, 153 A.2d 321.

While control is a key element for imposing vicarious liability on a principal, "supervisory acts performed by the [principal] will not give rise to vicarious liability . . . [because] application of principles of *respondeat superior* are not warranted where the [principal]'s supervisory interest relates [only] to the result to be accomplished, not to the means of accomplishing it." *Id*. (internal citations and quotation marks omitted).

## DISCUSSION

Viewed in the light most favorable to JFC, based on the foregoing undisputed evidence at trial regarding the independent and self-determinative nature of the franchisee's performance of the transportation jobs received through Royal's dispatch system, and Royal's complete lack of control over the manner and means of the livery work performed by the franchisee/drivers, the court finds that Royal is entitled to judgment as a matter of law as to

7

JFC's cross-claim for contribution. The court finds that prescribing the model and year of the vehicle to be used by Royal franchisees is insufficient to establish the requisite control to find that Royal is liable for the alleged negligence of its independent contractor, Mr. Kaykov. The undisputed evidence at trial, including the Franchise Agreement, Rule Book and testimony regarding the manner in which franchisees operated their vehicles and performed livery jobs dispatched by Royal, established that franchisees, including Mr. Kaykov, exercised self-determination in the manner in which livery jobs were performed. Royal's only exercise of authority over its franchisees, such as Mr. Kaykov, was of a general supervisory nature that does not support application of vicarious liability. *See, e.g.*, *Mavrikidis*, 153 N.J. at 133, 707 A.2d 977. Indeed, at the time of the accident giving rise to this action, Mr. Kaykov was operating his own enterprise as a franchisee and independent contractor under the Franchise Agreement, and was not operating his vehicle under the direction of Royal.

JFC has been fully heard at trial on its cross-claim against Royal, having had the opportunity to present evidence and testimony by Mr. Kaykov and Royal's representative, and having stated to the court that it has no other fact witnesses to present. The court thus finds that there is insufficient evidence for a reasonable jury to find for JFC on its contribution cross-claim against Royal and grants Royal's motion for judgment as a matter of law.

## CONCLUSION

Based on the foregoing, Royal's motion for judgment as a matter of law on JFC's cross-claim for contribution is granted. JFC's cross-claim for contribution is dismissed with prejudice and the clerk of court is respectfully requested to enter judgment in favor of Royal Dispatch and against JFC on JFC's cross claim.

**SO ORDERED**.

Dated: January 20, 2013
Brooklyn, New York

/s/
Kiyo A. Matsumoto
United States District Judge